## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JACQUES LaPREAD,

      Plaintiff,

vs.                         CASE NO.:  8:23-cv-00727-CEH-AAS

DANIEL SLAUGHTER IN HIS OFFICIAL
CAPACITY AS CHIEF OF POLICE
CLEARWATER POLICE DEPARTMENT,

      Defendant.

_____/

## <u>AMENDED COMPLAINT AND</u>
## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff JACQUES LaPREAD, by and through his undersigned counsel, hereby sues Defendant DANIEL SLAUGHTER, in his official capacity as Chief of Police, Clearwater Police Department[1] and in support thereof states as follows:

## <u>JURISDICTION</u>

1.    This is an action for damages which exceeds $75,000.00, exclusive of costs and attorney's fees.

2.    This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a) (3); 28 U.S.C. §

---

[1] Upon information and belief, after this action was filed, Daniel Slaughter retired, and the current Chief of Police is Eric Gandy.  Plaintiff will file a separate Motion to Amend

1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

3.   Venue is proper in this judicial district and division pursuant 28 U.S.C. § 1391(b) in that Defendant's independent and collective malicious and unlawful violations under color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division. At all material times defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton and willful disregard of plaintiff's human, safety and liberty rights including those of the Plaintiff.

4.   This is an action for damages brought pursuant to 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the Constitution and laws of the United States, and pursuant to 42 U.S.C. §1988, which authorizes the award of costs and attorney's fees to prevailing Plaintiff in actions brought pursuant to 42 U.S.C. §1983.

5.   The actions of Defendant complained of herein were taken under color of state law.

_____

the case style to reflect proper name of the current Chief of Police.

6.     This action is permitted by Fla. Stat. §768.28(1), which waives sovereign immunity for the State and its agencies and subdivisions for the negligent acts or omissions of its employees and agents arising out of and in the course and scope of their employment complained of herein, pursuant to Section 768.28, Florida Statutes.

7.     All conduct of the CLEARWATER POLICE DEPARTEMENT ("CPD") took place in Pinellas County Florida, which is also where Defendant is located.

8.     At all times material hereto, Defendant is vicariously liable for the negligent actions or omissions of his officers.

9.     Defendant was notified in writing of the intent to initiate litigation on or about November 27, 2019, pursuant to F.S. §768.28(6)(a), and as such, all conditions precedent to bringing this action have been satisfied.

## THE PARTIES

10.     At all times material to this action, Plaintiff JACQUES LaPREAD ("LaPREAD" or "PLAINTIFF") was a resident of Safety Harbor, Pinellas County, Florida.

11.     At all times material to this action LaPREAD was and is an African American male.

3

12.    At the time of the incident that is the subject of this matter, DANIEL SLAUGHTER[2] was Chief of Police for the City of Clearwater and, as such, was the chief law enforcement officer in Pinellas County, Florida, and was responsible for providing primary law enforcement services to residents of the county (hereinafter "Defendant").  At all times relevant, Defendant therefore, had assumed all duties and responsibilities associated with this position.

13.    To aid in executing these duties, Defendant employs support staff, including law enforcement deputies acting as servants and/or agents of Defendant, and at all times relevant, they were acting within the course and scope of their employment, including not limited to MICHAEL BUIS ("BUIS"), KYLE BINGHAM ("BINGHAM") and HENRY GILES ("GILES") who were officers with the CPD.

## **FACTUAL BACKGROUND**

14.    On or about June 20, 2019, at approximately 7:51 p.m., Jennifer Butler Stanley ("Stanley") called 911 to report that someone had broken into her Jeep, which was parked at the Eddie C. Moore Ball Field in Clearwater, Florida and stolen her wristlet.

15.    The wristlet case contained, a military ID card, a Florida driver's license, credit cards, a PDQ gift card, an Outback gift card, a Target gift card,

---

[2] See Footnote number 1 herein.

a Swarovski ball point pen, a Panera Bread gift card, a medical insurance card and a "Sweet Tea" loyalty card.

16.     There were no witnesses to the break-in of Stanley's Jeep.

17.     According to CAD notes, at approximately 8:06 p.m., one of Stanley's stolen credit cards was used at a Speedway Gas Station at 1625 McMullen Booth Rd, Clearwater Florida to purchase $6.95 of cigarettes.

18.     Additionally, the Stanley stolen credit card was used to purchase goods in the amount of $218.76 at the Walgreens located at 1701 McMullen Booth Road, Safety Harbor, Florida.

19.     CPD was called to investigate a car burglary and the use of the stolen credit card.

20.     On that same evening, LaPREAD returned to his home in Safety Harbor, Florida from work at Tech Data Corporation ("Tech Data"), where he had been employed for almost seven (7) years.

21.     LaPREAD changed from his work cloths into a short-sleeve white t-shirt and blue cargo shorts so that he could go to a local car wash to wash the exterior and clean the interior of his car.

22.     LaPREAD left his home in Safety Harbor and proceeded to the Speedway gas station on McMullen Booth Road in Clearwater Florida and withdrew $20.00 from the ATM machine at the Speedway for use at the car

wash.

23.    LaPREAD used part of that $20.00 to make a cash purchase at the Speedway.

24.    Upon exiting the Speedway, LaPREAD observed several CPD officers entering the Speedway, and he stopped to hold the door open for them to enter.

25.    LaPREAD then proceeded to the Main Street Xpress Car Wash located at 1735 McMullen Booth Rd, Clearwater, Florida, across the street from the Speedway where he cleaned his vehicle and returned to his home.

26.    Unbeknownst to LaPREAD, the officers for whom he held the door were at the Speedway were the members of the CPD investigating the Stanley car break-in and credit card theft. One of the officers thought LaPREAD "looked suspicious," so he watched LaPREAD enter his vehicle and wrote down his license plate number as LaPREAD was driving away.

27.    According to the CAD notes, as 8:18 p.m., the CPD ran the plate number and it revealed LaPREAD as the owner.

28.    Upon information and belief, after running LaPREAD'S plates, and while at the Speedway, CPD officers obtained video of the individual who used the Stanley stolen credit card.  The video shows an African American male with a full beard and sideburns wearing long grey pants, a

6

white long sleeved thermal shirt.  The video also showed a relative height of the individual using the stolen credit card.

29.    The individual on the Speedway video did not reasonably resemble LaPREAD, other than both were male and African American.

30.    The individual on the video was shorter that LaPREAD, had a full beard and sideburns, where LaPREAD did not have beard.  Further, LaPREAD'S clothing, both at the Speedway and at the time of the arrest, were completely different that the clothing of the man on the video.

31.    Additionally, LaPREAD was see by the CPD officers at the Speedway significantly after the time when the stolen card was used.

32.    Upon information and belief, CPD officers made no attempt to compare video of the man using the stolen credit card to the video of LaPREAD withdrawing cash from the ATM or later, making his cash purchase at the Speedway.

33.    Upon information and belief, CPD officers made no attempt to confirm the method of payment by LaPREAD at the Speedway, which, if they had done so, would have easily revealed he used cash to make his purchase, and not a credit card.

34.    CPD did not obtain a warrant to arrest LaPREAD.

35.    CAD notes show that at 9:38 p.m. the CPD arrived at

LaPREAD'S home.

36.    When CPD arrived at LaPREAD'S home, LaPREAD was standing outside.  CPD officers approached him with guns drawn and held him at gunpoint, handcuffed him and placed him under arrest at 9:41 p.m.

37.    LaPREAD was held and gunpoint by CPD officers, handcuffed and placed into the back of a CPD car while his mother and small children were watching.

38.    CPD officers did not question LaPREAD before his arrest.

39.    Eventually, Officer Bingham arrived at the LaPREAD residence where he was being detained and read LaPREAD his Miranda Rights and advised him he was being charged with auto burglary and fraudulent use of a credit card.

40.    LaPREAD immediately advised the officers that he did not commit any of those crimes.

41.    LaPREAD's vehicle was searched in his driveway while his young children and neighbors watched.  The contents of the LaPREAD vehicle's glove box and storage were pulled out dumped into the seats.

42.    However, CPD did <u>not</u> find any of the following items: Stanley's military ID card, her Florida driver's license, her credit cards, her PDQ gift card, her Outback gift card, her Target gift card, her Swarovski ball point pen,

her Panera Bread gift card, her medical insurance card nor her "Sweet Tea" loyalty card.

43.    Further CPD did not find the cigarettes purchased at the Speedway, or any cigarettes, as Mr. LaPREAD does not smoke.

44.    In short, CPD found no physical evidence in the vehicle or on LaPREAD's person to link LaPREAD to the vehicle burglary or use of the stole credit card or any of the other items Stanley reported stolen from her vehicle.

45.    At the time of his arrest, CPD had no evidence that LaPREAD had been to the Walgreen's that evening, where Stanly's stolen credit card was also used.

46.    While his small children and neighbors watched, LaPREAD was then put in a transport van, where he was shackled and taken to the Pinellas County Jail.

47.    CPD lacked probable cause for the arrest of LaPREAD.

48.    Based on the lack of physical evidence, the lack of a reasonable investigation and the lack of actual or arguable probable cause, the targeting and arrest of LaPREAD by CPD was the result of racial profiling.

49.    LaPREAD'S vehicle was impounded by CPD and removed from the driveway by a tow truck.

50.     LaPREAD was booked into the Pinellas County Jail at 12:48 a.m. on June 21, 2019, and charged with felony burglary of an unoccupied conveyance and two felony fraud counts for the use of the stolen credit card at the Speedway and the Walgreens.

51.     LaPREAD was subject to hours of imprisonment until he was finally release on bail.

52.     As the result of the arrest and the filing of felony charges against him, LaPREAD had to retain the services of a criminal defense attorney.

53.     As the result of his arrest and the filing of the felony charges against him, an because of the nature of his work at Tech Data, LaPREAD had to disclose the charges to his employer.

54.     As the result of his arrest and the filing of the felony charges against him, LaPREAD was ineligible for a promotion and other advancements and benefits at Tech Data.

55.     As the result of his vehicle being impounded, LaPREAD had to pay in order to get his vehicle release and to obtain access to the personal and business items inside of his vehicle when it was wrongfully impounded.

56.     On November 14, 2019, the State Attorney's office completed their investigation and concluded that the facts and circumstances did not warrant prosecution, and specifically, that he did not believe that the CPD

identified the correct suspect.

57.    Plaintiff LaPREAD has satisfied all conditions precedent to the bringing of this action, including those set forth in §768.28 of the Florida Statutes.

**COUNT I**
**42U.S.C. §1983 – FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL SEARCH AND SEIZURE**

58.    LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

59.    Defendant, prior to November 27, 2019, had adopted and promulgated policies, custom, practice and procedure which allowed officers to engage in racial profiling and arrests without actual or apparent probable cause.  These practices encouraged the deputies of Defendant to act with reckless disregard for the life and liberty of LaPREAD.

60.    Implementation of this policy, custom, practice and procedure, by Defendant, resulted in a deprivation of LaPREAD'S constitutional rights.

61.    Prior to November 27, 2019, the Defendant permitted, encouraged, tolerated and ratified a pattern of practice of unjustified and unreasonable behavior by police officers in that;

    a.    Defendant maintained a culture and processes that permitted and/or encourage racial profiling;

b.  Defendant failed to discipline or prosecute officers in any manner dealing with known racial profiling;

c.  Defendant refused to investigate complaints of previous racial profiling

d.  By both means of inaction and a cover-up of racial profiling, Defendant encouraged deputies employed by it to believe that racial profiling was permissible.

62.  Defendant has maintained and adopted, promulgated and implemented a policy, custom, practice and procedure of racial profiling deputies that resulted in the unlawful arrest of LaPREAD.

63.  Defendant has maintained an inadequate system of review of incidents where charges individuals were misidentified based only on their color, and has failed to discipline, or more closely supervise officers who in fact intentionally engage in racial profiling.

64.  On information and belief, the systematic deficiencies include, but are not limited to:

a.  preparation of investigated reports which uncritically rely solely on the word of deputies involved in the incidents which systematically allows for an arrest in the absence of evidence;

b.  preparation of investigated reports which omit factual information and physical evidence;

c.  failure to review investigative report by responsible superior officers for accuracy or completeness and acceptance of conclusions which are unwarranted by the evidence or which contradicts such evidence;

      d.      allowing for an arrest without an arrest warrant when circumstances were not exigent.

65.    The foregoing acts, omissions, and systematic deficiencies of policies and customs of the Defendant and such caused the deputies of the Defendant, including officers Buis, Bingham and Giles, to be unaware of the laws and rules governing the correct procedures for identifying suspects without racial bias, and for the proper handling of investigation without the use of racial profiling to identify suspects.

66.    As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of the Defendant lead to the wrongful arrest and detention of LaPREAD.

67.    By the actions and omissions described above, Defendant, acting under color of state law and as integral participants, violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution. These deprivations include, but are not limited to:

      a.      The right to be free from detention without reasonable suspicion;

      b.      The right to be free from arrest without probable cause;

      c.      The right to be free from unreasonable search and seizure of property;

      d.      The right to be free from excessive force.

68.    Defendant subjected Plaintiff to wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendant's acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

69.    As a direct, foreseeable and proximate result of the negligent supervision and training of the officers by the CPD, LaPREAD suffered damages which include bodily injuries and/or physical suffering; pain and suffering, physical inconvenience, physical discomfort; loss of time; mental anguish, embarrassment, humiliation, intentional infliction of emotional distress, disgrace and other emotional and reputational damages; these damages are continuing to this day and are likely to continue in the future.

70.    Plaintiff has also incurred expenses, including, but not limited to, past and future lost income and loss of job opportunity in relation to the defamatory content of his false arrest.

WHEREFORE, the Plaintiff, LaPREAD, respectfully requests this Court enter judgment in favor of Plaintiff and award compensatory damages for the damages referenced above, the litigation costs incurred in this matter and any further relief this Court deems just.

**COUNT II**
**42 U.S.C. Section 1983 – FOURTEENTH AMENDMENT**
**EQUAL PROTECTION AND DUE PROCESS**

71.    LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

72.    By the actions and omissions described above, Defendant and its employees, acting under color of state law, and as integral participants, violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

73.    Defendant intentionally discriminated against Plaintiff based on race and the color of his skin.

74.    Defendant intentionally employed racial profiling in order to identify LaPREAD as a person of interest, which lead to his wrongful detention and arrest.

75.    Defendant used racial profiling in the place of reasonable investigation in order to assert probable cause.

76.    Defendant would not have harassed, detained, arrested, used force on, and searched Plaintiff if he were Caucasian. Choosing to detain Plaintiff is illegal racial profiling and prohibited by the Fourteenth Amendment's Equal Protection Clause.

77.    Defendant subjected Plaintiff to their wrongful conduct,

depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendant's acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

WHEREFORE, the Plaintiff, LaPREAD, respectfully requests this Court enter judgment in favor of Plaintiff and against Defendant and award compensatory damages for the damages referenced above, the litigation costs incurred in this matter and any further relief this Court deems just.

## COUNT III
## FLORIDA COMMON LAW ASSAULT

78.     LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

79.     Defendant intentionally, and without consent or legal justification, made harmful and offensive physical contact with Plaintiff and thereby placed Plaintiff in fear of an imminent harmful or offensive contact.

80.     Specifically, CPD officers Buis, Bingham and Giles intentionally and unlawfully pointed guns at LaPread, forced him to the ground and handcuffed him.

81.     Those circumstances created fear of an imminent peril in

LaPread.  CPD and its officers had the apparent present ability to effectuate the threats presented to LaPread.

82.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress, mental disturbance, fright, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages.  Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, Plaintiff LaPREAD, hereby demands a trial by jury, judgment for damages against Defendant for injuries and damages sustained in this action, costs, and any other relief the Court deems just and proper.

## COUNT IV
## FLORIDA COMMON LAW FALSE IMPRISONMENT

83.    LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

84.    Defendant's officers intended to arrest and detain Plaintiff without a warrant or other legal justification.

85.    In doing so, Defendant's Officer's handcuffed LaPREAD, placed him in a patrol car against his will, transported him to jail where he was held for hours without a warrant or probable cause for an arrest, thereby depriving

him of his liberty and freedom of movement.

86.    Defendant acted under color of state law by falsely arresting and detaining LaPREAD with no basis in fact or law to do so.

87.    LaPREAD was unlawfully detained and deprived of liberty, against his will, and in a manner which was unreasonable and unwarranted under the circumstances.

88.    LaPREAD was consciously aware of his confinement and resulting harm.

89.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress, mental disturbance, fright, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages.  Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, the Plaintiff LaPREAD, hereby demands a trial by jury, judgment for damages against Defendant for injuries and damages sustained in this action, costs, and any other relief the Court deems just and proper.

## COUNT V
## FLORIDA COMMON LAW BATTERY

90.    LaPREAD hereby restates and re-alleges paragraphs one (1)

through fifty-seven (57) above as though fully stated herein.

91.    Defendant's officers intentionally touched LaPREAD, or caused him to be touched, while wrongfully seizing and arresting LaPread.

92.    In doing the things herein alleged, Defendant intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

93.    Defendant's officers used unreasonable force to unlawfully seize and arrest LaPREAD.

94.    LaPREAD did not consent to the Defendant's use of force.

95.    Defendant's officers use of unreasonable force was a substantial factor is causing LaPREAD harm.

96.    Defendant's officers use of unreasonable force was in disregard of LaPREAD'S rights.

97.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress, mental disturbance, fright, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages.  Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, Plaintiff LaPREAD, hereby demands a trial by jury, judgment for damages against Defendant for injuries and damages sustained in this action, costs, and any other relief the Court deems just and proper.

## COUNT VI
## FLOIRDA COMMON LAW INVASION OF PRIVACY

98.   LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

99.   During the incident giving rise to this action, LaPREAD had a reasonable expectation of privacy in his personal affairs, including the contents of his personal belongings.

100. In doing the things herein alleged, Defendant's officers intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his person and his belongings without a warrant or other legal justification.

101.   Defendant's invasion of Plaintiff's privacy would have been offensive to any reasonable person.

102.   There were no exigent circumstances that existed to justify the invasion of LaPREAD'S privacy.

103.   As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress, mental disturbance, fright, humiliation,

emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, the Plaintiff LaPREAD, hereby demands a trial by jury, judgment for damages against Defendant for injuries and damages sustained in this action, costs, and any other relief the Court deems just and proper.

## COUNT VII
## FLORIDA COMMON LAW NEGLIGENCE

104. LaPREAD hereby restates and re-alleges paragraphs one (1) through fifty-seven (57) above as though fully stated herein.

105. Defendant and its officers and agents owed Plaintiff a duty to use reasonable care in connection with the parties' interactions as described herein.

106. In particular, said Defendant's had a duty to carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal detention, arrest, seizure, retaliation for exercise of free speech or petition for redress grievances, use of force, or deprivation of any of the other rights enumerated herein, and to use reasonable care to avoid engaging in biased policing or racial profiling.

107.   In doing the things herein alleged, Defendant breached the operational aspects of the duty of care by acting unreasonably, carelessly, negligently and/or recklessly.

108.   As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress, mental disturbance, fright, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages.  Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, the Plaintiff LaPREAD, hereby demands a trial by jury, judgment for damages against Defendant for injuries and damages sustained in this action, costs, and any other relief the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

## **DEMAND FOR ATTORNEY'S FEES**

Plaintiff has been required to retain counsel to represent him in this action and hereby demands his attorneys' fees and costs pursuant to 42 U.S.C. §1988, which authorizes the award of costs and attorney's fees to

prevailing Plaintiff in actions brought pursuant to 42 U.S.C. §1983.

Dated this 1st day of December 2023.

/s/ Lisha Bowen
**LISHA BOWEN, ESQUIRE**
Fla. Bar No.: 0169374
**BOWEN LAW GROUP**
P.O. Box 173442
Tampa, FL 33672
Phone: (813) 995-5580
Fax: (813) 489-4344
Email: lisha@bowentrials.com
Counsel for Plaintiff

23